J-S34007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LARRY MAZE | : | |
| | : | |
| Appellant | : | No. 557 WDA 2023 |

Appeal from the PCRA Order Entered April 19, 2023
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000599-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LARRY MAZE | : | |
| | : | |
| Appellant | : | No. 558 WDA 2023 |

Appeal from the PCRA Order Entered April 19, 2023
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000600-2014

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LARRY MAZE | : | |
| | : | |
| Appellant | : | No. 559 WDA 2023 |

Appeal from the PCRA Order Entered April 19, 2023
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000266-2014

BEFORE:  LAZARUS, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED: October 27, 2023**

Larry Maze appeals from the order,[1] entered in the Court of Common Pleas of Jefferson County, dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. After review, we affirm.

On June 16, 2015, a jury convicted Maze of numerous sex crimes committed against three girls who were 12-13 years old at the time of the offenses. On May 3, 2016, the trial court found Maze to be a sexually violent predator and sentenced him to an aggregate term of 86 to 270 years' incarceration. Maze's post-sentence motion was denied. He appealed to this Court, which found both of his claims waived. However, we *sua sponte* vacated Maze's SVP designation pursuant to the then-existing precedent established by ***Commonwealth v. Butler***, 1225 WDA 2016 (Pa. Super. filed Oct. 31, 2017) ("***Butler I***") (holding then-effective SVP statute unconstitutional). ***See Commonwealth v. Maze***, 893 WDA 2016 (Pa. Super. filed Nov. 20, 2017) (unpublished memorandum decision).

Maze filed a timely PCRA petition, claiming that appellate counsel was ineffective for failing to properly preserve Maze's challenge to the discretionary aspects of his sentence. On August 19, 2019, the PCRA court reinstated Maze's post-sentence and direct appeal rights, *nunc pro tunc*. Maze filed a

---

[1] Maze has complied with the dictates of ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018), by filing three separate notices of appeal, each listing a single docket number. On July 17, 2023, this Court issued an order consolidating Maze's appeals. ***See*** Pa.R.A.P. 513.

- 2 -

post-sentence motion to reconsider his sentence, *nunc pro tunc*, which the trial court granted. The court vacated Maze's original sentence and scheduled a resentencing hearing, at which the court resentenced Maze to an aggregate term of 72½ to 208 years in prison.

Following resentencing, Maze filed a timely post-sentence motion in which he alleged that his sentence was the product of bias, prejudice, partiality, and ill-will on the part of the trial court. The court denied the motion, and this Court affirmed Maze's judgment of sentence on appeal. **See id.**, 241 A.3d 435 (Pa. Super. 2020) (Table).

On December 2, 2021, Maze filed the instant PCRA petition. The PCRA court appointed counsel, who filed an amended petition alleging, *inter alia*, the ineffectiveness of trial counsel for failing to file a motion for recusal of the trial court judge, and the ineffectiveness of prior PCRA counsel for failing to raise the issue of trial counsel's ineffectiveness. The PCRA court held a hearing on December 9, 2022, at which time trial counsel and prior PCRA counsel testified. On April 19, 2023, the PCRA court denied relief. Maze filed timely notices of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He raises the following issues for our review:

> 1. Whether the [PCRA c]ourt erred by failing to find Scott White, Esquire[,] as trial counsel and first appeal attorney, ineffective for failing to object and move for recusal of [the] trial judge when appropriate during trial proceedings and/or post[-]sentence review[.]

- 3 -

2. Whether the [PCRA c]ourt erred by failing to find George N. Daghir, Esquire[,] as [resentencing, appellate, and first PCRA] attorney[,] ineffective for failing to raise[,] in [Maze's] first PCRA, the issue of Attorney White's ineffectiveness for failing to object and move for recusal of [the] trial judge when appropriate during trial proceedings and/or post[-]sentence review[.]

Brief of Appellant, at 4.

In reviewing an order denying relief under the PCRA, this Court's standard of review is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. **Commonwealth v. Hipps**, 274 A.3d 1263, 1266 (Pa. Super. 2022).

Here, Maze's claims are grounded in allegations of ineffectiveness on the part of trial and first PCRA counsel. A PCRA petitioner will be granted relief on such a claim only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. **Commonwealth v. Dennis**, 950 A.2d 945, 954 (Pa. 2008). To obtain relief, a petitioner must demonstrate that counsel's performance was deficient, and that the deficiency prejudiced the petitioner. **Strickland v. Washington**, 466 U.S. 668, 687 (1984). A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* at 694. Under the ***Strickland*** test, a petitioner is required to prove: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission. ***Commonwealth v. Tedford***, 960 A.2d 1, 12 (Pa. 2008), citing ***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987) (adopting U.S. Supreme Court's holding in ***Strickland***). "If a petitioner fails to prove any of these prongs, his claim fails." ***Commonwealth v. Simpson***, 66 A.3d 253, 260 (Pa. 2013) (citation omitted).

Maze asserts that trial counsel was ineffective for failing to seek the recusal of the trial judge, the Honorable John H. Foradora. Regarding Maze's underlying claim, "a party to an action has the right to request the recusal of a jurist where that party has a reason to question the impartiality of the jurist in the cause before the court." ***Goodheart v. Casey***, 565 A.2d 757, 762 (Pa. 1989). "A motion for disqualification or recusal is properly directed to and decided by the jurist whose participation is challenged." ***Commonwealth v. Travaglia***, 661 A.2d 352, 370 (Pa. 1995), citing ***Goodhart***, *supra*. In disposing of a recusal request, a jurist must first make a conscientious determination of his or her ability to assess the case before the court in an impartial manner, free of personal bias or interest in the outcome. ***Goodhart***, 565 A.2d at 764. "This is a personal and unreviewable decision that only the jurist can make." *Id.* "If content with that inner examination, the judge must then decide whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence

in the judiciary." ***Commonwealth v. Druce***, 848 A.2d 104, 108 (Pa. 2004). An appellate court presumes judges are fair and competent, and reviews the denial of a recusal motion for an abuse of discretion. ***In re Lokuta***, 11 A.3d 427, 435 (Pa. 2011).

Here, Maze argues that, prior to and during trial, Judge Foradora was aware of prior uncharged accusations against Maze of a sexual nature. Maze alleges that, over the course of trial, Judge Foradora made certain statements that revealed to the jury his resulting bias against Maze, caused the jury to question Judge Foradora's impartiality, and raised the appearance of impropriety.

The first instance in which Maze asserts Judge Foradora allegedly exhibited bias occurred on day one of Maze's trial, at which time Judge Foradora instructed the jury "to be alert for anything in a witness['] testimony to assist in judging the truthfulness, accuracy[,] and weight of the testimony." Brief of Appellant, at 13. Maze asserts that this "fully proper" instruction nonetheless "laid the groundwork for the jury to consider everything that occurred before them." ***Id.*** This claim is patently meritless. The instruction cited by Maze was taken by Judge Foradora, *verbatim*, from Pennsylvania Suggested Standard Criminal Jury Instruction 2.03 (Credibility and Weight of Evidence). To the extent that the jury did, in fact, "consider everything that occurred before them," they acted properly and in compliance with the court's entirely appropriate instruction.

The next instance of alleged bias occurred when one of the victims was testifying as to what Maze had done to her. The victim indicated that Maze had touched her breast, and the District Attorney Jeffrey D. Burkett, Esquire, asked her whether it took "a long time, or did it happen quickly?" N.T. Trial, 6/15/15, at 51. She responded that it "happened quickly," and, when further asked to "show us, approximately, how long we're talking about," she "[i]ndicat[ed]." *Id.* The following exchange then transpired:

> [DISTRICT ATTORNEY]: Let the record reflect it was a fairly brief touching there and then—
>
> [DEFENSE COUNSEL]: Not even half a second.
>
> THE COURT: I didn't have a stopwatch. I'd say less than two [seconds].

*Id.* Maze argues that Judge Foradora, "[i]n offering this statement[,] . . . took away from the jury their interpretation of the testimony and instead substituted his own, increasing both counsels' estimations to the detriment of [Maze]." Brief of Appellant, at 13. This claim is meritless.

During his introductory statement to the jury, Judge Foradora instructed the panel as follows:

> I am not, however, the judge of the facts. It is not for me to decide what are the true facts about the charge against the defendant. You, the jurors, are the sole judges of the facts. It will be your responsibility at the end of the trial when you deliberate to evaluate the evidence and from the evidence find what the facts are.

N.T. Trial, 6/15/15, at 9. Judge Foradora reiterated those instructions during his final charge to the jury at the close of trial. *See id.*, 6/16/15, at 161.

At trial, the jurors were able to observe the witness indicating how long Maze touched her breast and were instructed that they, alone, were the sole judges of the facts. Jurors are presumed to follow the trial court's instructions. ***Commonwealth v. Tyson***, 119 A.3d 353, 360 (Pa. Super. 2015). Accordingly, the fact that Judge Foradora voiced his own estimation of the time period indicated by the witness—which estimation was similar to those voiced by the District Attorney and defense counsel—is of no moment and certainly no indication of bias.

Next, during direct examination of another witness, defense counsel objected on the basis of hearsay to a statement made by the witness. The following exchange then occurred:

> [DISTRICT ATTORNEY]: And this is, once again, simply for the purpose of showing how this transpired; it's not for the truth of the matter asserted.
>
> THE COURT: Ladies and gentlemen, I'll overrule the objection. But hearsay has two components. It has to be an out-of-court statement, and it has to be admitted for the truth of the matter asserted. I'm allowing it to be admitted for her state of mind, meaning to show her reaction, not to say whether it was true or not. So[,] it's accepted for the truth of the matter asserted but for her state of mind.

N.T. Trial, 6/15/15, at 144-45. Maze argues that "[t]he jury heard the Commonwealth attorney say [the statement was not to be accepted for the truth of the matter asserted] but then heard the [j]udge say it was[,] . . . to the detriment of [Maze]." Brief of Appellant, at 14. This claim is also meritless.

It is readily apparent from the context of Judge Foradora's explanation that the jury was only to consider the statement in question to show the witness' state of mind, "not to say whether it was true or not." N.T. Trial, 6/15/15, at 145. While the last sentence of Judge Foradora's explanation does include a misstatement as to the purpose for which the testimony could be used, it is apparent that either Judge Foradora misspoke, or the court reporter made an error in transcription. In either case, the error cannot reasonably be deemed evidence of bias.

Maze next points to additional "statements made during [cross-examination of Maze] that defense counsel should have recognized as potentially showing bias." *Id.* As the district attorney was questioning Maze regarding Facebook messages sent between Maze and one of the victims, which Maze claimed he did not send or receive, the following exchange occurred:

> [DISTRICT ATTORNEY]: **And you, during that entire time span, never got a message on Facebook that made you go: ["]What the heck is this about?["] Never?**
>
> A: No. Because there's messages on my thing. Like, Troy, you said that they were being deleted. I didn't delete my messages. So if I'm not seeing them, how in the heck do I know what's going on?
>
> Q: Well, that's just my point, sir. How would the person know when they're coming back in?
>
> A: No. I don't know.
>
> Q: Wasn't there a high likelihood when so much time would go by that what if that message came in and you had your phone on? What if you had it on your person? What if you were on your

Facebook and a message shows up, wouldn't that person had to have major control over your phone all the time?

A: I'm not sure. I didn't document the times and the dates and when my phone was being borrowed out here or when I wasn't home. And so I didn't have video surveillance stating, oh, well, this person just went into my home. You see what I'm saying? I don't know what's going on. I don't know who is writing this stuff, and I have no control over this. But if I'm not seeing something.

Q: **But over all these times with all these messages, sometimes a whole day going by between messages, you never saw anything pop up on your Facebook account that made you go: [``]What the heck is that about?[``]**

[DEFENSE COUNSEL]: **Hasn't this question been asked and answered, Your Honor?**

[DISTRICT ATTORNEY]: I don't think it has.

THE COURT: **Overruled.**

N.T. Trial, 6/16/15, at 95-97 (emphasis added). Maze asserts that Judge Foradora, in overruling defense counsel's "asked and answered" objection, further demonstrated to the jury his bias against Maze. Once again, we disagree. While the question had, in fact, been asked and answered, Maze provides no support for his assertion that a single erroneous evidentiary ruling is evidence of bias warranting recusal. Indeed, "simply because a judge rules against a defendant does not establish any bias on the part of the judge against that defendant." *Commonwealth v. Travaglia*, 661 A.2d 352, 367 (Pa. 1995). Moreover, the erroneous ruling could not reasonably be deemed to have impacted the outcome of Maze's trial.

Maze's next example of the alleged impact of Judge Foradora's purported bias again involves his own testimony. We quote Maze's argument in full:

- 10 -

> While answering a question [Maze] stopped himself: "[b]ecause it was said—or can I continue; I don't want it to be hearsay." At his point, [Maze] is couching his responses in terms of not wanting [them] to be determined by the [c]ourt as hearsay, a reaction to the [c]ourt's earlier lecture defining hearsay. How can a jury perceive that? Based on earlier explanations by the [c]ourt about hearsay[,] . . . the testifying defendant is concerned about how the [c]ourt will perceive his answers. The jury can perceive that as a defendant beaten down[,] which is yet another example of sufficient reason trial counsel should have moved for recusal.

*Id.* at 15-16.

This argument is nonsensical. Judge Foradora properly and relevantly explained the concept of hearsay to the jury in the context of a previous witness' testimony. The fact that Maze listened to the court's instruction and sought to conform his own testimony accordingly is simply not evidence of bias on the part of the trial court.

Finally, Maze points to the conclusion of the defense's case, when the following exchange occurred:

> [DEFENSE COUNSEL]: That's all I have, Your Honor.
>
> THE COURT: [District Attorney] Burkett?
>
> [DISTRICT ATTORNEY]: I have nothing further.
>
> THE COURT: You may step down. Your next witness?
>
> [DEFENSE COUNSEL]: That's all I have, Your Honor. **Defense rests.**
>
> THE COURT: Ladies and gentlemen, that concludes the case from the defense side. Since we've been at it for two and a half hours, **I didn't expect that**—unless, [District Attorney] Burkett, you have any[ ]more questions?
>
> [DISTRICT ATTORNEY]: I may.

- 11 -

> THE COURT: So[,] we'll take a fifteen minute break, and you can decide whether you're calling any rebuttal witnesses.

N.T. Trial, 6/16/15, at 107-08 (emphasis added). Maze asserts that the jury could have perceived the court's statement, "I didn't expect that," as the court "having an expectation of a minimal defense" and that this statement was "another missed cue for recusal." Brief of Appellant, at 16. This claim is meritless. It is impossible to discern from context precisely what Judge Foradora "didn't expect," as he cut himself off mid-sentence. However, no reasonable jury would question the court's impartiality based on a brief sentence fragment, the exact meaning of which is unclear.

In sum, "the fact that the trial judge may have been made aware of improper evidence does not require recusal[,] because[] a trial judge is presumed to be capable of disregarding improper evidence, including evidence of prior criminal acts." *Commonwealth v. Irwin*, 639 A.2d 52, 54 (Pa. Super. 1994). Maze has failed to demonstrate that Judge Foradora's conduct over the course of trial demonstrated bias, prejudice, ill-will, or unfairness which could have raised a substantial doubt as to his ability to preside impartially. *Dip*, *supra*. Accordingly, trial counsel cannot be deemed ineffective for failing to file a motion for recusal, and prior PCRA counsel was not ineffective for failing to raise the issue. *Tedford*, *supra*; *Simpson*, *supra*.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/27/2023</u>